UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSHUA REED,

    Plaintiff,

    v.

C. ROBERTS *et al.*,

    Defendants.

CAUSE NO. 3:22-CV-361-DRL

## OPINION AND ORDER

Joshua Reed, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding against Sgt. Chloe Roberts "in her individual capacity for compensatory and punitive damages for subjecting him to excessive force on December 4, 2020, when she deployed chemical spray into his cell while he was handcuffed in violation of the Eighth Amendment[.]" ECF 9 at 5. Second, he is proceeding against Officer Joshua Gadd "in his individual capacity for compensatory and punitive damages for subjecting him to excessive force on December 4, 2020, when he yanked his arms through the cuff-port using a lead strip while he was handcuffed in violation of the Eighth Amendment[.]" *Id.* at 5-6. Third, he is proceeding against Sgt. Roberts, Officer Gadd, and Officers Bass, Learoue, and Sizemore "in their individual capacities for compensatory and punitive damages for being deliberately indifferent by denying him a decontamination shower and leaving him in his cell after being exposed to chemical spray which caused the skin on his face and back to burn off on December 4, 2020, in violation

of the Eighth Amendment[.]" *Id.* at 6. The defendants filed a motion for summary judgment. ECF 61. Mr. Reed filed a response, and the defendants filed a reply. ECF 66, ECF 70. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

A. *Excessive Force Claim against Sgt. Roberts.*

Mr. Reed is proceeding against Sgt. Roberts for violating his Eighth Amendment rights by "subjecting him to excessive force on December 4, 2020, when she deployed chemical spray into his cell while he was handcuffed[.]" ECF 9 at 5. The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but

2

maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id.* at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations when officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted. *Id.* at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That isn't to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890.

Sgt. Roberts and Officer Gadd attest to the following facts. At all relevant times, Sgt. Roberts was a sergeant in charge of the Restricted Housing Unit (RHU) where Mr. Reed was housed. ECF 61-1 at 1. Sgt. Roberts was aware Mr. Reed had a history of refusing to follow orders, engaging in disruptive behavior, and attempting to assault

3

correctional staff and other inmates. *Id.*[1] On December 4, 2021, several hours before the use of force, Sgt. Roberts escorted Mr. Reed out of his cell for his scheduled time to use the telephone. *Id.* at 2. During the escort, Mr. Reed told Sgt. Roberts he had "traded" some of his phone time to another inmate in exchange for that inmate's recreation time. *Id.* Sgt. Roberts told Mr. Reed that inmates could not "trade" their allotted time to use the phone or recreation area, and Mr. Reed became angry and began shouting at Sgt. Roberts. *Id.* Sgt. Roberts instructed Mr. Reed to return to his cell, but Mr. Reed physically resisted and refused numerous orders to return to his cell before eventually complying and returning to his cell. *Id.* at 1-2.

A few hours later, Officer Gadd was escorting inmates in the RHU one at a time from their cells to the shower and back. ECF 61-2 at 1. When Officer Gadd arrived at Mr. Reed's cell, Mr. Reed submitted to physical restraints and his hands were cuffed behind his back. *Id.* at 2. However, once Officer Gadd opened Mr. Reed's cell door, Mr. Reed stood in the doorway and refused to move unless he had an opportunity to speak with Sgt. Roberts. *Id.* Mr. Reed was blocking the door to his cell so that Officer Gadd couldn't close the door, and refused to reenter his cell or go to the shower. *Id.* Officer Gadd summoned Sgt. Roberts by radio in hopes that Mr. Reed would become cooperative. *Id.*

---

[1] Mr. Reed argues this attestation should be excluded as irrelevant, prejudicial, and because the defendants don't provide evidence of these prior acts. ECF 66 at 4-5. But Sgt. Roberts can attest to her personal knowledge of Mr. Reed's history because it's relevant to Sgt. Roberts' state of mind during her interactions with Mr. Reed. And even assuming this evidence may be prejudicial, it still can be considered at the summary judgment stage. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (noting evidence is not usually excluded under Rule 403 at the summary judgment stage). Rule 56 just requires evidence to be able to be rendered admissible.

When Sgt. Roberts arrived at Mr. Reed's cell, Mr. Reed shouted at her about his "rec time." ECF 61-1 at 3. Sgt. Roberts told Mr. Reed he either needed to go with the correctional officers to the shower or go back into his cell and let the officers remove his handcuffs so they could escort the next inmate to the shower. *Id.* Mr. Reed loudly shouted that he wouldn't go to the shower or into his cell. *Id.* He stood in his doorway and refused to move, which prevented the correctional officers from closing and securing his cell door. *Id.* The correctional officers attempted to push Mr. Reed into his cell, but he resisted. *Id.* Sgt. Roberts warned Mr. Reed that, if he continued to resist, she would use OC spray to gain his compliance. *Id.* at 4. Mr. Reed continued to shout and resist, so Sgt. Roberts sprayed him with a "minimal amount" of OC spray, at which point he went back into his cell and allowed the door to be closed. *Id.* Sgt. Roberts used just enough OC spray to gain Mr. Reed's compliance. *Id.*

In response, Mr. Reed provides an affidavit of his own, in which he says he submitted to mechanical restraints and his cell door was opened so he could be escorted to the shower, and that he "stayed inside of his cell" and asked the correctional officers if he could speak to Sgt. Roberts. ECF 66-1 at 2-3. Sgt. Roberts responded on the radio that she wasn't walking up the stairs just to talk to him, and that if she came upstairs, she was going to spray him with OC spray. *Id.* at 3. Mr. Reed then "attempted to plead" his case to the correctional officers, at which time Sgt. Roberts came up the stairs. *Id.* Mr. Reed began to speak to Sgt. Roberts about his concerns regarding his recreation time and shower, but Sgt. Roberts immediately pulled out OC spray and told him to step inside of

5

his cell. *Id.* Before Mr. Reed could respond, Sgt. Roberts sprayed him with OC spray and someone pushed him into his cell and shut the door. *Id.*

Sgt. Roberts argues summary judgment is warranted in her favor because she used only a reasonable amount of force to overcome Mr. Reed's resistance and get him back into his cell. ECF 62 at 3-4. Mr. Reed responds that Sgt. Roberts' use of force was excessive because he was never physically aggressive or threatening to any of the correctional officers and they could have physically removed him from the doorway without using OC spray. ECF 66 at 6-7.

Here, there's no evidence by which a reasonable jury could conclude Sgt. Roberts violated Mr. Reed's Eighth Amendment rights by applying OC spray. Specifically, Mr. Reed doesn't dispute he stood in the way of his cell entrance and refused numerous orders from Sgt. Roberts and the other correctional officers to move, even after Sgt. Roberts warned him that she would use OC spray if he continued to resist. It is also undisputed Sgt. Roberts applied only a minimal amount of OC spray to gain Mr. Reed's compliance. *See Musgrove v. Detella*, 74 F. Appx. 641, 646 (7th Cir. 2003) (OC spray "can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate," and "violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain'") (citing *Soto*, 744 F.2d at 1270–71). Though Mr. Reed suggests Sgt. Roberts could have physically moved him from his cell door without using OC spray (ECF 66 at 6-7), this doesn't show her application of OC spray was excessive, as physically removing him from his cell door without using OC spray could have resulted in injury to Mr. Reed or

6

the correctional officers. Because Sgt. Roberts used only a minimal amount of OC spray to overcome Mr. Reed's resistance, secure him in his cell, and restore order in the prison, no reasonable jury could conclude her application of OC spray was malicious or sadistic. Summary judgment is thus warranted in favor of Sgt. Roberts on this claim.

B. *Excessive Force Claim against Officer Gadd.*

Mr. Reed is proceeding against Officer Gadd for violating his Eighth Amendment rights by "subjecting him to excessive force on December 4, 2020, when he yanked his arms through the cuff-port using a lead strip while he was handcuffed in violation of the Eighth Amendment[.]" ECF 9 at 5-6.

Sgt. Roberts and Officer Gadd attest to the following facts. After Sgt. Roberts applied OC spray and closed Mr. Reed in his cell, she ordered him to place his hands through the cuff port so the correctional officers could remove his handcuffs. ECF 61-1 at 4. Mr. Reed did so, but when Officer Gadd reached down to unlock his handcuffs, Mr. Reed snatched his hands away, stating that if they wouldn't give him his recreation time, he wouldn't give them their handcuffs. ECF 61-2 at 3. Mr. Reed moved away from the door toward the back of his cell. *Id.* Officer Gadd and the other correctional officers spent several minutes directing Mr. Reed to put his hands in the cuff port so they could remove his handcuffs. *Id.* At one point, Mr. Reed put his hands through the cuff port, but snatched them away again when the correctional officers attempted to unlock the handcuffs. *Id.* One of the correctional officers was able to grab the lead strip of the handcuffs at this time, and the other correctional officers pulled on the lead strip to keep Mr. Reed from retreating to the back of his cell. *Id.* at 3-4. Mr. Reed resisted the efforts to pull him closer

to the door and attempted to pull away. *Id.* at 4. The correctional officers were eventually able to get Mr. Reed's hands close enough to the cuff port so they could remove his handcuffs. *Id.*

In response, Mr. Reed says immediately after he was sprayed with OC spray and his cell door was shut, his arms "shot right up" due to "prison officials" excessively and aggressively pulling and yanking on the lead strip that was connected to his wrist restraints. ECF 66-1 at 3-4. Mr. Reed cried out in pain, but the prison officials continued to excessively and aggressively pull and yank on the lead strip. *Id.* at 4. Mr. Reed didn't intentionally resist but was "incapable of controlling" his own movements. *Id.* Eventually, Mr. Reed was able to guide himself up to his knees, at which point Officer Gadd was able to remove the wrist restraints and lock and secure the cuff port. *Id.*

Officer Gadd argues summary judgment is warranted in his favor because he used only as much force as was necessary to overcome Mr. Reed's resistance and remove his handcuffs. ECF 62 at 4. Mr. Reed responds that Officer Gadd used excessive force because the correctional officers began "excessively [and] aggressively pulling and yanking" on the lead strip "immediately" after his cell door shut, which left him incapable of controlling his own movements. ECF 66-1 at 3-4.

Here, there's no evidence in the record by which any reasonable jury could conclude Officer Gadd violated Mr. Reed's Eighth Amendment rights. Specifically, it is undisputed that Mr. Reed didn't comply with orders to place his hands through the cuff port and instead pulled away to the back of his cell. Though Mr. Reed attests he didn't mean to resist but rather was "incapable of controlling" his own movements, the

8

correctional officers were entitled to use some force to regain control over Mr. Reed to remove his handcuffs. Moreover, even assuming that some of the correctional officers used excessive force against Mr. Reed, Mr. Reed provides no evidence that Officer Gadd in particular used excessive force. Specifically, Mr. Reed attests only that "prison officials" pulled and yanked on the lead strip until Officer Gadd was "able to remove the wrist restraints and then lock [and] secure the cuff port." Because it is undisputed that Mr. Reed either didn't or couldn't comply with orders to place his hands in the cuff port, and because there is no evidence Officer Gadd used any force other than removing Mr. Reed's wrist restraints and locking the cuff port, no reasonable jury could conclude Officer Gadd violated Mr. Reed's Eighth Amendment rights. Accordingly, summary judgment is warranted in favor of Officer Gadd on this claim.

> C. *Deliberate indifference claim against Sgt. Roberts, Officer Gadd, Officer Bass, Officer Learoue, and Officer Sizemore.*

Mr. Reed is proceeding against Sgt. Roberts and Officers Gadd, Bass, Learoue, and Sizemore for violating his Eighth Amendment rights by "being deliberately indifferent by denying him a decontamination shower and leaving him in his cell after being exposed to chemical spray which caused the skin on his face and back to burn off on December 4, 2020[.]" ECF 9 at 6.

A violation of the Eighth Amendment consists of two elements: (1) an injury that is objectively serious enough to have deprived the inmate of the minimal civilized measure of life's necessities, and (2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the second prong, Mr. Reed must show the defendants "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citations omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)).

Sgt. Roberts and Officer Gadd attest to the following facts. Once Mr. Reed was secured in his cell and his handcuffs were removed, Sgt. Roberts informed him she would give him some time to calm down and he would get a decontamination shower once the other inmates in the unit had their showers. ECF 61-1 at 5. She explained to Mr. Reed that, based on his behavior that day, she didn't believe he could be trusted to cooperate with correctional staff if they attempted to remove him from his cell at that time. *Id.* Mr. Reed loudly stated that he didn't want a shower and not to come back. *Id.*

In response, Mr. Reed attests that, once he was secured in his cell, he requested a decontamination shower and Sgt. Roberts "walked away." ECF 66-1 at 5. An hour and a half later, Mr. Reed asked Officer Sizemore if he could receive medical attention and a decontamination shower. *Id.* Officer Sizemore contacted Sgt. Roberts via radio, and Sgt. Roberts responded that Mr. Reed could have a shower after the other inmates on the unit had received their showers. *Id.* Officer Sizemore then contacted the medical unit, but they

10

were too busy to see Mr. Reed at that time. *Id.* Mr. Reed eventually received a shower "hours later." ECF 66 at 16; ECF 36-2 at 14.

The defendants argue summary judgment is warranted in their favor because they weren't deliberately indifferent to Mr. Reed's health or safety, as they offered him a decontamination shower and reasonably made him wait until the other inmates on the unit had showered before letting him out of his cell. ECF 62 at 5-8. In his response, Mr. Reed argues the defendants left him in his cell despite "knowing that the condition that I was left under posed a risk of needless pain if not treated at once." ECF 66 at 13-15.

Here, the parties agree Sgt. Roberts made Mr. Reed wait in his cell until after the other inmates on the unit had showered before he could receive a decontamination shower. Sgt. Roberts attests she made this decision because she believed Mr. Reed couldn't be trusted to be removed from his cell at that time and needed time to calm down to ensure his disturbance had ended, as he had caused disturbances on both occasions he had been let out of his cell that day. The Seventh Circuit previously has held that "detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering," but "holding the inmate until the disturbance has clearly ended does not[.]" *Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005) (citing *Williams v. Benjamin*, 77 F.3d 756, 764-65 (4th Cir. 1996)). Here, it is undisputed Sgt. Roberts made Mr. Reed wait in his cell for several hours after the application of OC spray before he received a decontamination shower. Unlike in *Kervin*, where the inmate was held in a "converted phone booth" without access to a sink, there is no evidence Mr. Reed was prevented from washing his face in his cell while

11

waiting for his decontamination shower. In his response, Mr. Reed doesn't argue or provide any evidence he suffered any injuries or negative effects from the application of OC spray,[2] and instead argues only that he required medical attention for his shoulder.[3] *See* ECF 66 at 13-16. Based on the evidence in the record, no reasonable jury could conclude Sgt. Roberts' conduct of making Mr. Reed wait in his cell until the other inmates on the unit had showered before he could receive a decontamination shower showed "a total unconcern" for his welfare "in the face of serious risks." *See Stockton*, 44 F.4th at 615. And there's no evidence that any of the other named defendants were involved in denying Mr. Reed a decontamination shower. Summary judgment is thus warranted in favor of the defendants on this claim.[4]

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 61); and

---

[2] Mr. Reed alleged in his complaint that leaving him in his cell caused the skin on his face and back to burn off. ECF 1 at 4. But Mr. Reed doesn't argue or provide any evidence in his summary judgment response regarding these alleged injuries, and the allegations in his complaint are insufficient to survive summary judgment. *See Goodman*, 621 F.3d at 654 (a party opposing a properly supported summary judgment motion may not rely merely on allegations in her pleading but must "marshal and present the court with the evidence she contends will prove her case.").

[3] Mr. Reed is proceeding against the defendants only "for being deliberately indifferent by denying him a decontamination shower and leaving him in his cell after being exposed to chemical spray," not for denying him medical care for his shoulder. ECF 9 at 6. Regardless, there's no evidence the defendants were deliberately indifferent to his shoulder injury, as it is undisputed Officer Sizemore contacted the medical unit regarding Mr. Reed's shoulder injury and was informed they couldn't see Mr. Reed at that time. ECF 66-1 at 5. The record contains no other evidence regarding Mr. Reed's shoulder injury.

[4] Because the court concludes the defendants didn't show a total unconcern for Mr. Reed's welfare, it doesn't reach the defendants' alternative argument that the lingering effects of OC spray are not an objectively serious injury.

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Joshua Reed and to close this case.

SO ORDERED.

September 13, 2024                  *s/ Damon R. Leichty*
                                                       Judge, United States District Court